Law Library

# IN THE SUPERIOR COURT
# OF GUAM

JON B. McDONALD, ALMA S. McDONALD, ESTATE OF DOMINGO BAE GUERRERO, by and through its duly appointed administrator JOAQUIN G. MUNOZ, ESTATE OF JOSE C PEREDO by and through its appointed Co-administrators FRANK STEVEN N. PEREDO and JOSE G. PEREDO, individually and on behalf of a class of others similarly situated,

               Plaintiffs,

vs.

GOVERNMENT OF GUAM, EDDIE BAZA CALVO, GOVERNOR OF GUAM, and DOES 1-25,

               Defendant.

Civil Case no. CV0223-10

**DECISION AND ORDER**
re: Motion for Class Certification

## INTRODUCTION

This matter came before the Honorable Judge Michael J. Bordallo on January 15, 2013. Plaintiffs were represented by Attorney Peter C. Perez. Defendant was represented by Assistant Attorney General Kathy A. Fokas. After considering the matters presented, the Court now issues the following decision and order DENYING Plaintiffs motion for class certification.

## BACKGROUND

The instant action stems from an inverse condemnation by the Plaintiffs on their own behalf and on the behalf of a class of persons similarly situated. Between August 1, 1950 and July 1, 1994, the Government of Guam expropriated private lands, including those owned by Plaintiffs, for public purposes without providing just compensation to the land owners.

On or about November 1992, the Office of the Inspector General of the U.S. Department of the Interior issued an Audit Report making eight (8) recommendations to the Government of Guam instructing the Department of Public Works ("DPW") to develop a policy concerning land taken previously for public roads and various programs identifying

which lands are needed and not needed for future road projects. These recommendations remain undone.

On or about February 23, 1994, the Guam Legislature passed Public Law 22-73, *An Act to Require the Government of Guam to Properly Compensate Landowners whose Property has been taken for Public Use and to Make an Appropriation to the Governor's Office in Connection Therewith.* The Legislative intent of Public Law 22-73 is stated in Section 1. It provides:

> "**Section 1. Legislative intent**. It has long been the practice of the practice of the Government of Guam to exchange private property of individuals for government land of equal value when the government needed the private land for public use. This practice has generally been fair and equitable. However, since 1945, it has also been the practice of the government to take private property without any compensation or compensatory exchange when that land has been needed for such purposes ... benefiting the public at large. This practice must cease immediately because it is contrary to the principles of eminent domain, justice, and constitutional guarantees of property rights"

Pursuant to Public Law 22-73, Section 2, the Governor and the Government of Guam are required to do the following:

> "**Section 2. Research on property taken**. The Governor shall immediately research and compile an exhaustive list of all private property which has been taken by the various agencies and departments of the government of Guam since 1945 and for which either no compensation or grossly inadequate compensation has been given, either in terms of money or by land exchange. The Governor may utilize all departments and agencies of the executive branch to expedite completion of this task. Land agencies of the executive branch are to expedite completion of this task. Land so taken shall include but not be limited to eminent domain, to condemnation, to outright taking, to all government easements (for any condemnation, to outright taking, to all government easements (for any reason), and to all similar means of taking. The report shall include the legal name of the property owner, the location of the land, any compensation offered (and whether or not accepted), the amount of land taken, the date taken, the current value of the land take, and all other pertinent information needed to ensure that justice is done for all....A copy of this report shall be transmitted to the Speaker of the Legislature no later than one hundred twenty (120) calendar days after enactment of this Act. If additional time is required to complete the report, a request justifying such an extension shall be made in writing to the Speaker."

The Defendants have failed to comply with the mandatory requirements of Public Law 22-73.

On or about December 12, 1996, the Guam Legislature passed Public Law 23-128. Section 32 of Public Law 23-128 amended Public Law 22-73. Section 9 is now codified as 7 G.C.A. § 11311.1. It authorized Plaintiffs to institute this action and states:

> **Inverse Condemnation.** Any person whose land was expropriated for public purposes by the government of Guam between August 1, 1950, and July 1, 1994, and who has not been compensated by the government of Guam for such taking may institute an action for inverse condemnation. In any taking by the government of Guam after July 1, 1994, in which the government fails to follow the eminent domain provisions of Title 21, Guam Code Annotated, the person whose land is taken shall have four (4) years from the time of such taking to institute an action for inverse condemnation. An action shall lie for the taking of a person's fee or for lesser compensable interest in the property which has been expropriated by the government of Guam without according the person due process. In any action for inverse condemnation in which an award is made to a person for a taking, the court shall also award reasonable attorney's fees and costs.

7 G.C.A. § 11311.1

Plaintiffs Jon B. Mcdonald and Alma S. Mcdonald are the fee simple owners of the property described as Lot 2374-2-1, Municipality of Barrigada, Guam.[1] Plaintiff Guerrero Estate is the fee simple owner of the property described as Lot No. 136-G, Mongmong-Toto-Maite, formerly Sinajana, Guam.[2] Plaintiff Peredo Estate is the fee simple owner of the

---

[1] During the period including and within August 1, 1950 and July 1, 1994, the Government of Guam expropriated from Jon B. Mcdonald and Alma S. Mcdonald and their predecessors in interests in said private property approximately 753 square meters of land, by encroaching upon said property for the construction of the Toto-Canada Road, for a public purpose without payment to them of just compensation.

[2] During the period including and within August 1, 1950 and July 1, 1994, the government of Guam expropriated from the Guerrero Estate and its predecessors in interest in said private property, approximately 1,728.1 square meters of land, by encroaching upon said private property for the construction of the Toto-Canada Road, for a public purpose, without payment to it of just compensation.

property described as Lot No. 160-4, Mongmong-Toto-Maite, formerly known as Sinajana, Guam.[3]

Plaintiffs assert they are each entitled to seek from the Defendants the recovery of just compensation, interest, reasonable attorneys' fees, and costs for the takings by the government of Guam of their respective private property, for public purposes, without having been given just compensation. Plaintiffs each seek the implementation, administration, and enforcement of Public Laws 22-73 and 23-128.[4]

On February 29, 2012, Plaintiffs filed a motion for class certification. In addition and/or in the alternative to this motion, Plaintiffs and the class Plaintiffs represent, seek a writ of mandamus compelling the Defendants to perform the above stated duties as no other plain, speedy, or adequate remedy at law is available. On December 26, 2012, the Government of Guam filed their opposition to motion for class certification. Subsequently on January 11, 2012, Plaintiffs filed their reply to Defendant's opposition. The Court now issues its decision and order DENYING Plaintiff's motion for class certification.

## DISCUSSION

The issue before the Court is whether Plaintiffs' claims should be adjudicated on a class-wide basis. Plaintiffs submit that their claims should proceed not individually but on

---

[3] During the period including and within August 1, 1950 and July 1, 1994, the Government of Guam expropriated from the Peredo Estate and its predecessors in interest in said private property approximately 5,575 square meters of land, by encroaching upon said private property for the construction of the Toto-Canada Road, for a public purpose, without payment to it of just compensation.

[4] *Inter alia* this includes that the Governor of Guam be ordered to immediately research and compile and exhaustive list of all private property which has been taken by the various agencies and departments of the government of Guam since 1945 and for which either no compensation or grossly inadequate compensation has been given, either in terms of money or by land exchanges, and to fully comply with Section 2 (of Public Law 22-73) and all other provisions of said Public Laws.

behalf of the following class: all persons identified in Public Law 22-73 and Public Law 23-128, specifically, all persons whose land was expropriated for public purposes by the government of Guam between August 1, 1950 and July 1, 1994 and who have not been compensated by the Government of Guam for such taking. Certification of this or a similar class is appropriate when the prerequisites of Rule 23(a) have been satisfied, in addition to the requirements of Subsection (b)(2) and/or (b)(3).

## A. Rule 23(a)

Under Guam law, certification of class actions is governed by the Guam Rules of Civil Procedure, Rule 23(a). It provides that a case is appropriate for certification as a class action if: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. G. R. Civ. Pro. Rule 23(a). When considering class certification under Rule 23, courts must perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have been satisfied. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982). Once a court has determined that the prerequisites of Rule 23(a) have been satisfied, it must then determine if the requirements of Subsection(b)(2) and/or (b)(3) have been satisfied. This Court will first discuss the prerequisites under Rule 23(a).

## 1. Numerosity

Rule 23(a) requires the class be "so numerous that joinder of all members is impracticable." G. R. Civ. Pro. Rule 23(a). In satisfying this prerequisite, there is no exact numerical cut-off; the specific facts of each case must be examined to determine if impracticability exists. *See e.g. Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). There is no

hard or fast rule for how many class members there must be for this requirement to be met. *Immigration Assistance Project of L.A. County Fed'n of Labor (AFL-CIO) v. I.N.D.*, 306 F.3d 842, 869 (9th Cir. 2002). In the instant case, Plaintiffs have identified the proposed class of persons to include, pursuant to P.L. 22-73, Section 1:

1) Property owners who collectively owned at least 375,000 square meters of land taken since 1950;
2) Property owners who owned at least 12,603 square meters of land taken since 1988;
3) Property owners who collectively owned at least 28,705 square meters of land taken on a temporary basis; and
4) Other property owners who collectively have had their land taken temporarily or permanently between August 1, 1950 and July 1, 1994 from by eminent domain, to condemnation, to outright taking, to all government easements (for any reason), and all similar means of taking.

P.L. 22-73 § 1.

Plaintiffs argue that identifying an exact number of class members first requires the Governor and the Government of Guam to comply with Section 2 of P.L. 22-73.[5] Pending this report Plaintiffs contend that a finding of the number of possible class members can be demonstrated through common sense. They reason that if one includes the period of time covered by the class definition, (1950-1994), and/or the amount of property implicated,[6] the class would exceed hundreds of members, if not thousands. The Government does not oppose this argument. As such, the Court finds Plaintiffs have satisfied the numerosity requirement.

**2. Commonality**

Rule 23(a)(2) is satisfied "if there are questions of law or fact common to the class."

---

[5] This section mandates the research and compilation of an exhaustive list of all private property which has been taken by the various agencies of the government of Guam since 1945. This list must identify: the property owner, the location of the property, whether compensation was given and accepted, the amount of the compensation if any, the current value of the property, and all other pertinent information regarding the land to ensure justice for all. P.L. 22-73.

[6] A minimum of 375,000 sm + 12,60 sm + 28,705 sm + and all other takings from 1950 – 1994.

F.R.C.P. Rule 23(a)(2). The U.S. Supreme Court held, "[c]ommonality requires the plaintiff to demonstrate that the class members 'suffered the same injury,' such that 'all their claims can be productively litigated at once.'" *Wal-mart Stores, Ind. V. Dukes*, 131 S. Ct. 2541, 2551 (2011). More specifically, Plaintiffs must show that their individual claims raise questions, when answered, that will resolve a factual or legal issue that is central to the validity of each class member's claim. *Id.* For the commonality requirement to be met, there must at least be one issue common to the proposed class. *In Re Telectronics Pacing Sys., Inc.*, 14 F.R.D. 222, 228 (S.D. Ohio 1995).

Plaintiffs argue that commonality is met because each potential class member has a private property interest in land or property in Guam, which was expropriated or taken by the Government of Guam for public purposes and each is entitled by law to bring an action for compensation under P.L. 22-73 and 23-128. They also argue that the questions raised by their claims will generate answers that resolve the Plaintiffs and the whole class's right to relief and just compensation.

The Government opposes this argument and submits as a general rule, that courts do not consider inverse condemnation suits as appropriate for class action. *See* 27 Am. Jur. 2d *Eminent Domain* § 802. The most common reasons for denying class certification in inverse condemnation cases are the failure to satisfy the commonality, typicality and adequacy prerequisites of Rule 23(a). *See City of San Jose v. Superior Court*, 12 Cal.3d 447, 525 P.2d 701, (Cal. 1974).

Plaintiffs, in their reply, argue that inverse condemnation class actions are appropriate. In support of this argument the Plaintiffs cite several cases. *Foster v. Detroi*, 405 F.2d 138 (6th Cir. 1968); *City of San Jose v. Superior Court of Santa Clara Cty.*, 525 P.2d 701; *Alexisos v. Metropolitan Airports Comm'n of Minneapolis & St. Paul*, 216 N.W.2d 651 (1974); *Corsello v.*

*Verizon New York, Inc.,* Court of Appeals, New York (March 29, 2012). The Court finds these cases to be distinguishable from the instant matter.[7]

The Government submits it is the uniqueness of the individual parcels that make the class treatment in this case inappropriate. *See also Friedman v. SanRafael Rock Quarry,* 10 Cal.Rptr.3d 82, 116 Cal. App. 4th 29 (2004) (variables that prevented class action in *San Jose* held analogous to the variables in this case). Even if class certification was warranted in inverse condemnation cases, the Government contends there are only limited circumstances where class certification is granted and such specific facts are not

_____

[7] In *City of San Jose v. Superior Court,* in which Plaintiffs sued the city on behalf of all real property owners located in the flight pattern of the San Jose Municipal Airport, for nuisance and inverse condemnation. *Id.* 12 Cal.3d 452-53, 525 P.2d 704-705. The California Supreme Court reversed the trial court decision and found the matter was not appropriate for class treatment, because the community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover because the actions were predicated on facts peculiar to each prospective plaintiff. *Id.* 12 Cal.3d 459-60, 525 P.2d 709-710. The California court relied on the rational that *each parcel of land is unique,* that development, use, topography, zoning, physical condition, and relative location are among the most important criteria to be considered. *Id.,* 12 Cal.3d 460-61. 525 P.2d 710.

> Moreover, even were we to allow a subclassification process here, the factors giving the uniqueness rule vitality would serve to break down the alleged beneficial aspects which such a process might yield under these facts, making a class action here unmanageable. Given the many recognized factors combining to make up the uniqueness of each parcel of land, the number of sub classifications into which the class would be required to be divided to yiled any meaningful result would be substantial. Under such circumstances, there is little or no benefit in maintaining the action as a class.
>
> Conversely, these uniqueness factors weigh heavily in favor of requiring independent litigation of the liability to each parcel and its owner. The superficial adjustions which class treatment here would entail could deprive either the defendant or the members of the class – or both – of a fair trial. Reason and the constitutional mandates of due process compel us to deny sanction to such a proceeding.

*Id.,* 12 Cal.3d 462, 525 P.2d 711.

present in the instant case. In *Dellaselva v. Florida Dep't of Agri. & Consumer Services,* the Florida Circuit Court determined class certification was appropriate because resolution of the case primarily involved determining whether the government's destruction of uninfected citrus trees constituted a taking and, if so, the replacement cost of the destroyed trees is easily calculated. 926 So.2d 1293 (Fla. App.), *review denied* 940 So.2d 427 (Fla. 2006).[8]

Plaintiffs also argue that a common issue which entitles them to class certification is the Government's failure to comply with the requirements of P.L. 22-73. The Government contends that it is not the Government's failure to compile a list which gives rise to entitlement to just compensation. The Court agrees. Plaintiffs cannot shift their burden of proving the existence of an ascertainable class to the Government. *See Wal-Mart*, 564 U.S. ___, 131 S.Ct. 2551; *Dept. of Fish & Game,* 197 Cal.App.4[th] 1331, 129 Cal.Rptr.3d 728 (citing *Linder v. Thrifty Oil Co.,* 97 Cal.Rptr.2d 179, 23 Cal.4[th] 429, 435 (2000)).

The Court recognizes that the Government understands its constitutional obligation to fairly compensate property owners for land taken for public purposes and its intentions are aligned with the Guam legislature to cure past wrongs and provide just compensation for persons whose land was taken and not adequately compensated. However, the records required to create such a list contemplated by P.L. 22-73 and P.L. 23-128 do not exist. Declaration of Serafin Monte G. Mafnas in Support of Opposition to Plaintiffs' Motion to Certify, ¶¶ 6, 8;

---

[8] *Dellaselva* is distinguishable from the instant case because this case does not have a uniformed formula which can be applied to determine just compensation for each individual property owner. In *Dellaselva* a methodology to establish damages existed which would result in a uniform result, thus avoiding the necessity of holding individual damages hearings. *Id.* at 9. The Court finds in the instant case, there are no common questions of law or facts. Each parcel of land is unique and the determination of just compensation would require a separate analysis and appraisal report.

Mafnas Decl. ¶ 5, 9 (Records relating to Federal Highway roadwork projects over the years were not always recorded with Land Management by the U.S. Government); Mafnas Decl., ¶ 9 (even if funding and human resources were available to perform a comprehensive title exam of the entire island, the information required in P.G. 22-73 could not be determined).

Under Guam law, "the law never requires impossibilities." 20 G.C.A. § 15123. The Court finds the Plaintiffs have not met their burden in proving common questions of law or fact. Since Plaintiffs have not met the commonality requirement, the Court denies Plaintiff's motion for class certification. Nonetheless the Court will briefly address the prerequisites of typicality and adequacy.

### 3. Typicality

Rule 23(a)(3) requires that, "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." F.R.C.P. Rule 23(a)(3). Plaintiffs argue that their interests are sufficiently aligned with the class, and their claims will thus be deemed 'typical' of the class, since they has suffered the same injury as other class members and that injury was caused by the same course of conduct by the Defendant. They assert that thier claims arise from same course of conduct, Government takings of land for public purposes, and thus the named representatives in Plaintiffs' claims rest on the same legal theories as those of the proposed class.

The Government contends there is no presumption of typicality. *See Wal-Mart*, 131 S.Ct. at 2551-52 (citing *Falcon*). Although the claims arise from the same course of conduct, each parcel of property is unique and the damages alleged by the Plaintiffs would vary and a case-by-case analysis would be necessary to evaluate adverse impacts on individual parcels of property. *Dept. of Figh & Game*, 197 Cal.App.4th 1331, 129 Cal.Rptr.3d727. The Court is *San Jose*, further explained that

The grouping and treating of a number of different parcels together, however, necessarily diminishes the ability to evaluate the merits of each parcel. The superficial adjudications which class treatment here would entail could deprive either the defendant or the members of the class – or both – of a fair trial. Reason and constitutional mandates of due process compel us to deny sanction to such a proceeding.

*City of San Jose,* 12 Cal.3d 462, 525 P.2d 711. The Government argues that the Plaintiffs who seek to be representatives of the proposed class do not possess the same interest and suffer the same injury as the class of Plaintiffs, thus they cannot fairly and adequately represent the interests of the class. Furthermore, as a means to ensure that representative parties protect the interests of the absent class members, courts have imposed a fiduciary duty to do so on the representative class members. *La Sala v. American Sav. & Loan Assn.,* 5 Cal. 3d 864, 871 (1971).

The Court finds certification of the class would violate Plaintiffs' fiduciary duty to raise claims reasonably expected to be raised by every member of the proposed class. Each property owner would be needed to testify as an expert witness[9] about the value of their property. This type of testimony cannot be substituted by the named Plaintiffs who seek to be representatives of the class. Accordingly, the requirement of typicality has not been met.

**4. Adequacy**

The adequacy prerequisite of F.R.C.P. Rule 23(a)(4) applies both to the ability to fairly and adequately represent the interests of the class members by possessing the same interests, as well as the adequacy of the attorneys to competently represent the class. *See Lerwill v. Inflict Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978. Adequacy requires, "1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and

2) the Plaintiffs are represented by qualified and competent counsel." *Dukes v. Wal-Mart Stores, Ind.,* 603 F.3d 571, 614 (9th Cir. 2010), *rev'd on other grounds,* 131 S. Ct. 2541 (2011).

Plaintiffs submit the representatives do not have conflicts of interests with the proposed class. The Plaintiffs seek on behalf of themselves and the class, the implementation, administration, and enforcement of P.L. 22-73 and 23-128. Although no conflict of interest exists, the Court finds: 1) there is no common issue of law or fact to be determined on behalf of the case due to the unique nature of each parcel of land, and 2) the damages are not typical to each land owner and must be calculated and determined on a separate and individual basis.

### B. Rule 23(b)(2) and or (b)(3)

A party seeking class certification bears the burden of establishing an appropriate ground for class action under Rule 23(b). *Id.* 158-61. In addition to the prerequisites of Rule 23(a), Plaintiffs seeking class certification must also satisfy one of the subsections of Rule 23(b). It provides:

> (B) **Types of Class Action.** A class action may be maintained *if Rule 23(a) is satisfied and if:*
>
> . . . .
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
>
> > (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

---

[9] Federal and Guam Rules of Evidence Rule 702 permit landowners to be included in a unique subset of experts known as "skilled witnesses." Unlike other valuation experts, their opinion testimony is admissible without further qualification.

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

G.R.C.P. Rule 23(b) (emphasis added). Since Plaintiffs have failed to meet their burden in satisfying the prerequisites of Rule 23(a), and the Court finds class certification is denied, the issue is moot. Nonetheless, the Court will briefly discuss the requirements of Subsection (b)(2) and (b)(3).

Rule 23(b)(2) provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." G.R.C.P. Rule 23(b)(2). Plaintiffs submit that challenges to government action are a paradigmatic use of Rule 23(b)(2) certification:

> The use of the class action device . . . is a common and necessary means of challenging unfair statutes, regulations and policies in an area where the individual claimant is unlikely to bring suit because of poverty and inaccessibility of judicial relief as an economic matter. Many class action suits have been brought against the United States Department of Health and Human Services . . . . , state welfare departments, state unemployment insurance boards, and other governmental agencies to challenge laws and regulations that discriminate or are otherwise unconstitutional either on their face or in practice.

Conte & Newberg, *Newberg on Class Actions* §23:1; *see also Dukes,* 131 S. Ct. at 2557-58 ("[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture"); *Baby Neal,* 43 F.3d at 58-59 ("It is the (b)(2) class which serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment). Plaintiffs contend that by

proceeding on behalf of all affected members of the public rather than just the named plaintiffs, Rule 23(b)(2) certification achieves many important benefits.[10]

In *Wal-Mart*, the Supreme court held that Rule 23(b)(2) ". . . does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." 131 S.Ct. 2557. The Government cites to another case, Ninth Circuit precedent prior to *Wal-Mart*, which parallels *Wal*-Mart's holding and provides that class certification under Rule 23*(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive. *Nelson v. King County*, 895 F.2d 1248, 1254-55 (9th Cir. 1990). Class action treatment would necessitate individual scrutiny as to the nature of each alleged taking, expert opinion as to land valuation for each parcel, assessment of damages for partial takings, and special benefit analysis which would legally offset any damages. *See United States v. River Rouge Improvement Co.*, 269 U.S. 411 (1926). The Court agrees. It finds in this matter that damages must be determined on an individual basis and not uninformed treatment through class certification.

Rule 23(b)(3) provides for class certification where questions of law or fact common to the members predominate over any questions affecting only individual members, and that class action is superior to other available methods for the fair and efficient adjudication of the controversy. G.R.C.P. Rule 23(b)(3). In determining Subsection(b)(3), the Court will also take into consideration whether the resolution of questions common to all the class members

---

[10] This allows: i) important and publicly beneficial claims to be brought that otherwise would be economically infeasible; ii) avoids mootness issues since even if the named plaintiffs claims become stale with the passage of time, a live controversy on behalf of the class will still exist; iii) enhances the effectiveness of any judgment since any class member will be able to monitor the defendants' compliance and bring suit to enforce violations; and iv) ensures that all those affect by discrimination in the past will be treated equally when to affording relief. *See* Conte & Newberg, *Newberg on Class Actions* §§ 12:7-11.

through a class action would be far more efficient than having a number of separate trials. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

In the instant case, Plaintiffs argue certification would help achieve judicial economy and a class action is superior to other available methods for adjudication of this claim. Furthermore, Plaintiffs contend as a matter of law they are entitled to the implementation, administration, and enforcement of P.L. 22-73 and 23-128.

The Government responds that the issue primarily turns on whether the legal and factual issues that must be resolved are "predominantly common to all class members or must be determined on an individual basis." *Dept. of Fish & Gave, supra*, 197 Cal.App.4[th] 1329, 129 Cal.Rptr.3d 726. As stated above, the legal and factual issues that must be resolved in Plaintiffs' asserted claims for inverse condemnation are not predominantly common to all of the proposed class members.[11] *Valentino v. Carter-Wallance, Ind.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).

---

[11] The Court finds there is no common issue of law or fact to be determined on behalf of the class. Each alleged taking would have to be established, expert real estate appraisals obtained and analyzed, testimony from each individual property owner, and the amount of compensation for each unique parcel of land would have to be determined.

# CONCLUSION

Based on the foregoing, the Court denies Plaintiffs motion for class certification on the grounds that Plaintiffs have failed to meet their burden in satisfying the prerequisites of Rule 23(a)(2) and (a)(3), commonality and typicality. In addition, the Court finds Plaintiffs do not satisfy the requirements of Rule 23(b)(2) or (b)(3).

SO ORDERED, this 28 day of May 2013.

HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the Clerk of the Superior Court of Guam. Dated at Hagatna, Guam

MAY 2 8 2013

Teresita S. Perez
Deputy Clerk, Superior Court of Guam